Hillary Wright
Plaintiff pro se
313 Degraw St., Apt. 2
Brooklyn, NY 11231
580-304-6241
hwrightdailymail@gmail.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF THE STATE OF NEW YORK

| | | |
|---|---|---|
| Hillary Wright | ) | Case No: |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| Mail Media INC, Associated Newspapers | ) | |
| LTD, Daily Mail and General Trust PLC, | ) | |
| DMG Media LTD, Rich Caccappolo, | ) | |
| Paul Dacre and Gerard Greaves | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | **DEMAND FOR A JURY TRIAL** |

## COMPLAINT

Plaintiff pro se Hillary Wright ("Wright") alleges as for her complaint against

defendants Mail Media INC ("Mail Media"), Associated Newspapers LTD ("ANL"), Daily

Mail and General Trust PLC ("DMGT"), DMG Media LTD ("DMG") and Rich Caccappolo

("Caccappolo"), Paul Dacre ("Dacre") and Gerard Greaves ("Greaves"):

## NATURE OF THE ACTION

1.      This is a civil action for copyright infringement and for the removal of copyright

management information pursuant to the United States Copyright Act 17 U.S.C. SS 101 *et*

*seq.*, and for additional torts.

2.      The action arises out of Defendants' unauthorized copying, reproduction, distribution and public display of Plaintiff's Photo, an original work, of which she is the author and exclusive copyright owner.

3.      Plaintiff demands a jury trial.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over these claims under 17 U.S.C. §101 *et seq.* pursuant to 28 U.S.C. §1331 and 28 U.S.C. 1338(a) as they are copyright claims which present a federal question.

5.      Venue is proper in this District under 28 U.S.C. 1391(b)(1) & (2) in that Defendants' primary U.S. place of business is located within this District and that the events giving rise to these claims took place within this District.

## PARTIES

6.      Plaintiff Hillary Wright is a natural person, citizen-journalist, media creator and activist who resides in Brooklyn, New York.

7.      On information and belief, DMGT is the holding company for ANL, DMG and Mail Media.

8.      On information and belief, ANL has an ownership or controlling interest in DMG and Mail Media.

9.      On information and belief, DMG is the flagship publisher of DMGT and operates DailyMail, MailOnline and DailyMail.com.

10.     On information and belief, Mail Media is a registered corporation under the laws of Delaware and is owned and controlled by ANL, DMG Media and/or DMGT. Mail Media

manages, operates, publishes and/or co-publishes the DailyMail, MailOnline and DailyMail.com.

11.     On information and belief ANL, DMG and Mail Media's United States headquarters is an office located at 51 Astor Place, 9th Floor, New York, NY, 10003[1] and each has a substantial operation throughout Manhattan, New York City and the United States.

12.     Rich Caccappolo is a natural person, on information and belief living in New York City, and is listed at https://www.dmgmedia.co.uk/ as DMG Media's current Chief Executive Officer and on his LinkedIn as the current Chief Operating Officer at DailyMail.com. He has worked for Defendants since 2013.

13. Paul Dacre is a natural person and is listed at https://www.dmgmedia.co.uk as DMG Media's Editor-In-Chief. He has worked for Defendants since 1979.

14. Gerard Greaves is a natural person and is listed at https://www.dmgmedia.co.uk/ as DMG Media's editor-in-chief. He has worked for Defendants since 2000.

<u>STATEMENT OF FACTS</u>

<u>Plaintiff's Work as a Citizen Journalist and Activist</u>

15.     During, and in the wake of, protests sparked in May 2020 over the Minneapolis police murder of George Floyd, Plaintiff Wright began to document her first-hand experience from the frontlines of these protests by frequently creating and sharing photos, videos and written reports to her Instagram and Twitter accounts with the intent of telling a more up-close, accurate and reflective story than traditional media's coverage of the same.

---

[1] According to https://www.dmgmedia.co.uk/contact/

16.    Her documentation was viewed by hundreds-of-thousands of people between 2020 and 2022 and her Instagram became a key source for frontline coverage of these protests that was highly respected and valued by those seeking more genuine, up-close and accurate accounts.

17.    Plaintiff "broke" several emerging protest-related stories that, once she documented them, were picked up as prominent local, national and international news stories by some of the most credible media outlets in the world including NBC and ABC's national news.

18.    By maintaining ownership and control of the platforms she posted from, and distribution of her photos and videos, Plaintiff intentionally ensured that her content could not be separated from the context of her coverage.

19.    Plaintiff took substantial risks to her health, wellbeing and personal and professional life to document these events in the manner that she did. This included physical and verbal assaults by police officers and right-wing counter protestors which led to injury, false arrest and severe online and in-person harassment by political extremists.

20.    Plaintiff built a strong credibility as a citizen-journalist and activist which held substantial value and was a direct result of her labor and assumed risks.

21.    Plaintiff holds a B.A. in journalism from the University of Oklahoma and a M.S. from Columbia University. She has prior professional experience as a writer, media creator, media platform operator, speaker and educator.

22.     Plaintiff spent a significant amount of time, labor, skill and financial resources in performing, and as a result of, this work.

23.     Plaintiff has been able to leverage a direct and extended audience to raise significant amounts of money for harmed and injured protestors, causes and targeted communities solely and directly through her Instagram account.

**The Events and Photo That Are the Subject of This Dispute**

24.     On December 11th, 2020, Plaintiff, in the course of her work as a citizen-journalist and activist, was present at a protest (the "Protest") in Manhattan, New York City.

25.     At the Protest, a woman named Kathleen Casillo ("Casillo") intentionally drove her car through the large group of protestors, seriously injuring many and making national and international news.[2] [3]

26.     Plaintiff was narrowly-missed by Casillo and her vehicle[4]; however she suffered severe and lasting psychological, emotional and physical injury as a result of Casillo's actions, and for which she continues to receive treatment.

27.     Plaintiff documented this attack, and several other things related to Casillo and her trial, extensively on her social media accounts between December 2020 and December 2021.

---

[2] https://abcnews.go.com/US/driver-crashed-crowd-people-nyc-injuring-charged/story?id=74687179
[3] https://www.nbcnews.com/news/us-news/driver-arrested-after-plowing-new-york-city-protesters-injuring-6-n1250993
[4] In fact, Plaintiff can be clearly seen just out of the path of Casillo's vehicle in the video posted by Defendants in their Article in question in this complaint.

28.     On December 1st, 2021, victims of Casillo's attack organized a rally outside of the Manhattan criminal court on the day of Casillo's first court date, at which Plaintiff was in attendance.

29.     At around 11am EST Plaintiff posted a Photo that she took at this rally (the "Photo") (see Exhibit A) to her Instagram account alongside a caption that spoke to both the initial attack by Casillo as well as the upcoming trial. (see *id.*)

30.     The content of the Photo solely and clearly references Kyle Rittenhouse, a far-right activist who shot and killed a Black Lives Matter protestor resulting in national and international prominence and nationally-televised trial which was completed in late November 2021, just weeks prior to Casillo's court date.

31.     Plaintiff did not at any point post, or otherwise publicly display, the Photo anywhere else.

32.     Plaintiff is the author and exclusive copyright owner of the Photo as effectively registered with the United States Copyright Office on December 2nd, 2021, registration number VA 2-293-166.

**Infringement of Plaintiff's Copyright**

33.     On information and belief, at some time on December 1st, 2021, and just hours after Plaintiff posted the Photo, Defendant DMG and its agents or employees copied and reproduced the Photo.

34.     Around 7:30pm EST that day, Defendants DMG displayed and distributed Plaintiff's Photo entirely and exactly as she captured and displayed it on her Instagram,

and in large format, without her consent or license and without any identification of Plaintiff as the author or copyright owner in the article[5]. (the "Article") (see Exhibit B)

35.     The Article, and Plaintiff's Photo, was published at www.dailymail.co.uk[6].

36.     On information and belief the Photo was also published in print in the DailyMail and other versions of the DailyMail and its affiliates to be uncovered through discovery in this case.

37.     Plaintiff was never compensated for the use of her Photo nor did she at any point agree to let Defendants use her Photo.

38.     Defendants knew, or should have known, that their acts comprised copyright infringement and therefore Defendants' acts were willful.

**Circumvention of Technological Measures to Protect Plaintiff's Copyrighted Photo and Removal of Plaintiff's Copyright Management Information**

39. Upon displaying and distributing the Photo in the Article, DMG and its agents separated and removed identifying information, and copyright management information, from the Photo leaving only the Photo itself visible.

40. At no point and in no way did DMG replace the identifying information, or otherwise cite it or identify the author or copyright owner of the work, in any other way after separating it from the Photo.

41. Posting of content by a user to Instagram allows the user and holder of a content file to display the image online without allowing download of the file and content itself. Therefore this technological measure, designed and implemented by Instagram,

---

[5] https://archive.md/kCvhP
[6] see *id.*

secures electronic protections that prevent downloading, copying or reproduction of content posted to the platform while still allowing the content to be viewed on a computer or smartphone.

42. On information and belief, DMG obtained Plaintiff's Photo from Instagram using an unknown method to copy and reproduce the Photo.

43. Additionally, posting content to Instagram allows a user and file holder to include information that identifies the author and copyright owner in multiple places and means; namely through the account's "handle", the post's "caption" and the account's "bio".

44. At the time of posting the Photo to her Instagram account, Plaintiff's Instagram "handle" was her first and last name, @HillaryWright. Her 'bio' also displayed her first and last name, Hillary Wright, as well as a way to contact her via either Instagram "direct message" or email. The "handle", "caption" and "bio" clearly identified the author and copyright owner of the Photo.

45. By separating Plaintiff's Photo from the identifying information, as well as her other documentation, Defendants frustrated Plaintiff's intent of having all citations and inclusions of her work provide access to her documentation of the protest movement as a whole, dating back to May 2020, discoverable, accessible and viewable.

**Defendants Are Aware of Their Duty to Adhere to Copyright and Related Laws**

46.     DMG is one of the largest media publishers in the world and the DailyMail has been in operation as a media business for more than 100 years[7].

---

[7] https://en.wikipedia.org/wiki/Daily_Mail

47. According to DMG's web site[8], "*MailOnline is one of the world's largest English speaking newspaper websites with more than 252million global unique visitors. . .more than 24.9m monthly unique visitors"*. *"MailOnline readers come back again and again for its <u>addictive content and unique tone</u>, and they are engaged like no other audience."* (emphasis added)

48. According to DMGT's 2021 investor annual report[9] the company's annual revenue for that year was just shy of one-billion-dollars[10] ($1,000,000,000).

49. On information and belief, knowledge of copyright laws and processes is a fundamental cornerstone of Defendants' business by virtue of their role as media and publishing parent and holding companies and executives responsible for the operation of these businesses held, owned and operated by Defendants.

50.    DMG's knowledge and understanding of copyright law is evidenced in their publication of the Article in question, which contained 18 total photos including Plaintiff's. <u>Each of the 18 photos, except for Plaintiff's</u>, cited the author and copyright owner information. (see Exhibit B) However, Plaintiff's photo as published by DailyMail contained no citation at all. (see *id.*)

51.    On December 6th, 2021, an agent of Plaintiff sent a letter via email to DailyMail at their New York City office regarding their unlawful use of Plaintiff's Photo and demanding that the Photo be removed and Plaintiff be compensated. (see Exhibit C)

---

[8] https://www.dmgmedia.co.uk/brands/mailonline/
[9] https://www.dmgt.com/wp-content/uploads/2022/09/DMGT_AR21_Interactive_PDF.pdf
[10] 2021 revenue was $972,000,000

52.   On December 15th, 2021, counsel for Defendants responded to Plaintiff's letter and offered $1,500 for use of her photo. Plaintiff did not accept and has not accepted any subsequent offers from Defendants.

53.  On information and belief, on or around December 16th, 2021, DMG removed Wright's photo from the Article on DailyMail.com[11].

**DailyMail's Sordid History and Reputation As a Media Outlet**

54.  The DailyMail is a for-profit tabloid[12] with a thorough, lengthy, sordid and well-documented history of alleged fabrication[13], sensationalism[14], plagiarism[15], copyright infringement[16], unethical journalistic practices[17], racism[18] and using criminal methods to obtain personal information of subjects[19] [20].

---

[11]
https://www.dailymail.co.uk/news/article-10265035/NYC-woman-hit-BLM-protestors-rejects-plea-deal-favor-trial.html
[12] *"As a right-wing tabloid, the Mail. . ."*
https://en.wikipedia.org/wiki/Daily_Mail#Editorial_stance
[13] "Wikipedia Bans DailyMail for 'Poor Fact Checking, Sensationalism and Flat-Out Fabrication', ARS Technica, February 2017
*https://arstechnica.com/information-technology/2017/02/wikipedia-bans-daily-mail/*
[14] *id.*
[15] "My Year Ripping Off the Web With the Daily Mail Online", Gawker, March 2015
https://tktk.gawker.com/my-year-ripping-off-the-web-with-the-daily-mail-online-1689453286
[16] **"Mavrix Photo Sues Daily Mail Of London For Copyright Infringement Of Celebrity Images"**
https://www.iptrademarkattorney.com/copyright-infringement-photo-mavrix-daily-mail-london-celebrity/
[17] "My Year Ripping Off the Web With the Daily Mail Online", Gawker, March 2015
https://tktk.gawker.com/my-year-ripping-off-the-web-with-the-daily-mail-online-1689453286
[18] *"If you write something that's blatantly prejudicial but not legally racist, you will be rewarded. None of the front-line reporters I worked with were racist, but there's institutional racism."* (former DailyMail employee Brendan Montague on DailyMail's racist culture rom "Mail Supremacy", New Yorker, April 2016)
https://www.newyorker.com/magazine/2012/04/02/mail-supremacy
[19] "Why Prince Harry, Elton John, and 5 Others Are Suing the *Daily Mail's* Publisher", Time Magazine, March 2023
https://time.com/6266242/prince-harry-daily-mail-lawsuit/
[20]https://variety.com/2022/politics/global/prince-harry-elton-john-elizabeth-hurley-sue-daily-mail-1235394871/

55. Also well documented is Defendants' alleged specific reliance on infringing, copying and misappropriating the work of others for their own advantage and financial gain, specifically copyrights.

56. According to former DailyMail.com news writer James King, who worked for DailyMail.com in their New York City office, and wrote in 2015, *"the Mail's (DailyMail.com) editorial model depends on little more than dishonesty, theft of copyrighted material. . .[21]."* (emphasis added)

57.  King also said, *"In a little more than a year of working in the Mail's New York newsroom. . .I saw other publications' work lifted wholesale[22]".*

58. A 2016 article in The New Statesman documents DailyMail.com allegedly copying and appropriating journalist Martin Fletcher's work and publishing it on their own site within only five hours of Fletcher's publication of the story, and without any acknowledgment that it was Fletcher's work[23].

59. Very much like Plaintiff, Fletcher had spent his own money, expended significant time and energy and taken significant risk in telling his story when he traveled to Iraq to report on the desecration of war graves.

---

[21] "My Year Ripping Off the Web With the Daily Mail Online", Gawker, March 2015
https://tktk.gawker.com/my-year-ripping-off-the-web-with-the-daily-mail-online-1689453286
[22] *id.*
[23] "What It's Like to Fall Victim to The Mail's Aggregation Machine", New Statesman, April 2016
https://www.newstatesman.com/politics/2016/04/what-it-s-fall-victim-mail-online-s-aggregation-machine

<u>**Defendants' Business Model Depends on Sensationalism and Copyright Infringement**</u>

60. On information and belief, DailyMail's business model depends on generating advertising and other revenue through the publication of sensational and often politically-tinted news stories including various accompanying media.

61. The companies' revenue, then, is primarily driven by the amount of people who view their publications and articles each year and it is a fundamental part of their business to drive this viewership by whatever means they can.

62. As with any for-profit business, Defendants' profits are amplified by cutting costs, whether that be human, administrative or financial.

63. By choosing to "infringe first, ask for forgiveness later", Defendants are able to reduce their costs and therefore increase their profits through copyright infringement.

<u>**Defendants Intentionally Used A Timely and Sensational Headline That Directly Referenced Plaintiff's Photo As a Means Of Generating Viewership and Revenue**</u>

64. Inclusion of Plaintiff's Photo in the Article was a result of both Defendants' leverage of sensationalism to drive viewership as well as cutting costs by using copyrighted materials without request; both of which substantially contribute to revenue and profits of Defendants' business.

65. On information and belief, due to the sensational and political nature and tone of the Article's headline, coupled with the political climate and proximity to the Kyle Rittenhouse trial at the time of publication, Defendants have driven significant traffic to DailyMail.com and the Article, from which they have substantially financially gained by including Plaintiff's Photo.

66. Without the ability to reference Plaintiff's Photo in the headline the incendiary - and valuable (to Defendants at least) -  headline referencing Kyle Rittenhouse and his recently-completed criminal trial would not have been possible.

67. The story published by DMG was about the rally outside of Casillo's trial and her trial held that day.

68. The headline of the DailyMail.com Article read *"BLM* (Black Lives Matter) *Mob Accuses White Mother-of-Three, 52, of Being the 'New Kyle Rittenhouse' After She Sent 50 of Them Flying Across Third Avenue When They 'Attacked Her Car' During 2020 Protests"*. (emphasis added)

69. The subject in Wright's Photo was a person holding a sign outside the courthouse prior to Casillo's hearing which read, "*Kathleen Casillo Is Kyle Rittenhouse"*. (see Exhibit A)

70. Notably, Plaintiff's Photo was the only photo, or reference at all, regarding Kyle Rittenhouse included in the Article. Therefore on information and belief the Article headline was a direct reference to Plaintiff's Photo.

71. Without the inclusion of Plaintiff's Photo with the Article, the attention-grabbing headline would not be possible or relevant. Therefore inclusion of Plaintiff's Photo was necessary for the creation of the Article's headline and provided significant value to Defendants.

72. The headline was intended to be sensational and incendiary as a means of driving interest, readership, traffic and therefore advertising revenue.

73. Other outlets who chose to tie their coverage of Casillo's trial to Kyle Rittenhouse documented this sentiment by including photographs taken by their own

photographers, and to which the publications therefore owned copyrights, who captured photos of attendees holding signs with this message. (see Exhibit C)

74. Defendants had a photographer on site at the courthouse that day, as evidenced by photos included in the Article taken that day at the courthouse by photographers from DailyMail.com. (see *id.*)

75. The amount of messaging related to Kyle Rittenhouse at the rally was minimal; just one, out of numerous, cardboard signs.

76. There was also no "mob" as the headline sensationalized; only a small group of peaceful and lawful attendees, most of whom were victims of a crime committed by Casillo.

77. Quotes from victims outside the courthouse contained in the Article said, *"Last year on Dec. 11, Kathleen Casillo drove her car at top speed through a crowd of human beings. I was one of those human beings—I never saw her coming,'", "She hit me flush from behind and set my body flying and flipping through the air and she kept driving.", "'It has been a very long year. Kathleen Castillo's car left me with five bulging discs in my back and a traumatic brain injury,'" and "It's one thing to face physical recovery. It's another to try to process what happened mentally and emotionally.'"* (see Exhibit

**Defendants Had Knowledge of the Infringement or Were Willfully Blind to It**

78. Defendants ANL, DMGT, Caccappolo, Dacre and Greaves at all times relevant had actual or constructive knowledge of specific acts of copyright infringement and other copyright violations by DMG and Mail Media, as well as their patterns and practice of the same and agreed to let this continue for the benefit of their business and personal

performance. Defendants' participation in the continued infringement on copyrighted materials was intentional.

79. Alternatively, Defendants ANL. DMGT, Caccappolo, Dacre and Greaves were willfully blind to the infringement in that they subjectively believed infringement was occurring via DMG and Mail Media on a consistent and frequent basis[24] and intentionally took deliberate actions to avoid learning about the infringements, which benefitted Defendants financially.

## Defendants Profited Off Plaintiff's Product While Taking On None Of the Risk or Cost

80. Plaintiff's product was her specific brand of documentation of a specific subject (progressive protests and related issues and events) done in a specific manner and relied on a significant amount of knowledge, experience, labor, risk and education.

81. Plaintiff's product competed with Defendants' product and business.

82. Defendants took on no risk or cost to cover these subjects in the same way, while Plaintiff took on substantial and significant risk and cost to do the same, all while having substantially fewer resources to do so and suffering mental and physical injuries in the process. Plaintiff has incurred significant financial, and other, expense in the course of producing her work.

83. Due to this, Defendants have substantially gained at Plaintiff's expense and injury.

## Impact to Plaintiff

84.     Plaintiff was severely injured physically, mentally and emotionally by the Casillo vehicular assault.

---

[24] DMG, DMGT, ANL and Mail Media are the subject of numerous copyright lawsuits in the U.S. and U.K..

85.     Defendant's infringement of Plaintiff's Photo related to this assault, coupled with the angle and use of her Photo to create an angle, was the proximate cause of additional severe, and exacerbated existing, physical, psychological and emotional distress.

86.     Defendants acted intentionally and recklessly and their conduct was extreme and outrageous and they knew, or should have known, that their infringement would injure Plaintiff.

87.     The wrongful acts of Defendants have also caused injury to Plaintiff's goodwill and reputation, the dilution of the credibility of her work as a citizen-journalist and activist and have impeded her ability to raise funds and actively contribute to a cause as she did previously.

## FIRST CAUSE OF ACTION
### (Copyright Infringement, 17 U.S.C. 501)

88.     Defendants have directly, unlawfully and wilfully infringed on Plaintiff's copyright as defined by 17 U.S.C. §106 and in violation of 17 U.S.C. §501 when they copied, reproduced, displayed and distributed Plaintiff's Photo without obtaining any license, or other express consent from Plaintiff, or providing Plaintiff with any compensation, or offer of compensation, in exchange for the use of the Photo.

89.     Defendants did so for commercial purposes and with the direct and immediate knowledge that Plaintiff should have been compensated for her Photo, if allowed to use it through consent of Plaintiff, and that the photo's inclusion would directly generate revenue and reduce costs.

90.     Defendants have received substantial commercial benefit upon the unlawful inclusion of Plaintiff's Photo, including, among other things, increasing traffic to the Defendant's web sites, increasing purchase of physical copies of their paper and thus increasing advertising fees or the potential for advertising fees for Defendants.

91.     Due to the wilful nature of Defendant's actions, Plaintiff is entitled to statutory damages of up to $150,000 for each infringed work.

92.     Plaintiff is also entitled to interest and reasonable costs and attorneys fees associated with bringing this claim.

## SECOND CAUSE OF ACTION
### (Circumvention of Technological Measures, 17 U.S.C. §1201)

93.     Defendants unlawfully circumvented technological measures meant to protect the copyright of the Photo when they, without the permission of Plaintiff or Instagram, avoided, bypassed, removed, deactivated and impaired the visibility of identifying information of Plaintiff when they cropped Plaintiff's Instagram name and other identifying information out of the Photo prior to publishing it and when they, without authorization, electronically duplicated the photo from Plaintiff's Instagram account for their own use.

94.     Plaintiff is entitled to statutory damages of not less than $200 and no more than $2,500 for each act of circumvention for a total to be determined.

95.     Should it be found that Defendants have violated this section within three years prior to this claim pursuant to a final judgment being entered, Plaintiff is entitled to up to triple the amount that would otherwise be awarded.

96.     Plaintiff is also entitled to reasonable costs and attorneys fees associated with bringing these claims.

### THIRD CAUSE OF ACTION
### (Removal of Copyright Management Information, 17 U.S.C. §1202)

97.     Defendants unlawfully removed copyright management information of the Photo including the name and other identifying information of the author and copyright owner, title and other information identifying the work when they intentionally separated the Photo from its information identifying the author and copyright owner.

98.     Plaintiff is entitled to  statutory damages of not less than $2,500 and no more than $25,000 for each violation, for a total of no less than $7,500 and no more than $75,000.

99.     Should it be found that Defendants have violated this section within three years prior to this claim pursuant to a final judgment being entered, Plaintiff is entitled to up to triple the amount that would otherwise be awarded.

100.    Plaintiff is also entitled to interest and reasonable costs and attorneys fees associated with bringing these claims.

### FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

101.    Defendant's unlawful use of Plaintiff's copyrighted work, and the context and manner in which it was done, were extreme, outrageous and disregarded a substantial probability to cause severe emotional distress to Plaintiff due to her experience with the topic of the Article and Photo, which was known to Defendants at the time.

102.    Defendants' actions were the proximate cause of severe and novel emotional and physical harm to Plaintiff as well as exacerbation of previous emotional and physical distress.

103.    Plaintiff is therefore entitled to recover compensatory damages and punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Contributory Copyright Infringement)

104.    ANL, DMGT, Caccappolo, Dacre and Greaves were at all times directly aware of DMG's pattern and practice of copyright infringement and materially contributed to that infringement and are therefore liable for DMG's copyright infringement and additional violations of Federal copyright law and other civil torts.

105.    ANL , DMGT, Caccappolo, Dacre and Greaves are jointly and severally liable for the damages and awards in this case.

106.    Plaintiff is therefore entitled to recover compensatory damages and punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Vicarious Copyright Infringement)

107.    ANL, DMGT, Caccappolo, Dacre and Greaves at all times were operators or supervisors of the business of DMG while also having a direct financial interest in it and are therefore liable for DMG's copyright infringement and additional violations of copyright law and other civil torts.

108.    ANL, DMGT, Caccappolo, Dacre and Greaves are jointly and severally liable for the damages and awards in this case.

109.    Plaintiff is therefore entitled to recover compensatory damages and punitive

damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Misappropriation)

110.    Defendants misappropriated Plaintiff's work, which took substantial time, skill,

effort, risk and money to create, and therefore are jointly and severally liable for her

damages caused by this.

111.    Plaintiff is therefore entitled to recover compensatory damages and punitive

damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

112.    Defendants were unjustly enriched when Plaintiff unknowingly conferred a benefit

in the form of the Photo to them without Plaintiff receiving proper restitution and

therefore Defendants are jointly and severally liable for an equitable remedy.

113.    Plaintiff is therefore entitled to recover compensatory damages and punitive

damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unfair Competition)

114.    Defendants engaged in unfair competition against Plaintiff when they injured the

goodwill toward Plaintiff as the result of copyright infringement and therefore

Defendants are jointly and severally liable for damages incurred by Plaintiff caused by

this.

115.    Plaintiff is therefore entitled to recover compensatory damages and punitive

damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Civil Conspiracy)

116.    Defendants agreed to enact copyright infringement, and other copyright violations

and civil torts, as a means of cutting costs, creating efficiencies and increasing profit and

intentionally engaged in acts in furtherance of this plan, therefore Defendants are jointly

and severally liable for damages incurred by Plaintiff caused by this.

117.    Plaintiff is therefore entitled to recover compensatory damages and punitive

damages in an amount to be determined at trial.

## RELIEF SOUGHT

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1.    Granting a temporary injunction forbidding Defendants or their subsidiaries from

using Plaintiff's Photo without consent and license.

2.    Granting a temporary injunction requiring Defendant to publish a disclaimer at the

end of the Article stating that their previous use of Plaintiff's Photo was used without

credit or license and properly citing Plaintiff's Instagram account as the primary source

and Plaintiff as the author and copyright owner.

3.    Restraining Defendants permanently from any further violations against the

copyrighted materials of Plaintiff.

4.    Finding Defendants jointly and severally liable to Plaintiff for statutory damages

for copyright infringement, including willful infringement, in the amount of up to

$150,000 in accordance with 17 U.S.C. §504(a)(2) & (c) and for costs, interest and reasonable attorney's fees pursuant to 17 U.S.C. §505.

5.    Finding Defendants jointly and severally liable to Plaintiff for statutory damages for circumvention of technological measures in the amount of no less than $200 and no more than $2,500 for each act of circumvention pursuant to 17 U.S.C. 1203(c)(3)(A).

6.    Finding Defendants jointly and severally liable to Plaintiff for statutory damages of triple the amount awarded under 17 U.S.C. 1203(c)(3)(A) if Defendants are found to have violated 17 U.S.C. 1201 or 1202 within three (3) years after a judgment was entered against Defendants for the same.

7.    Finding Defendants jointly and severally liable to Plaintiff for statutory damages for circumvention of technological measures in the amount of no less than $2,500 and no more than $25,000, for a total of no less than $7,500 and no more than $25,000, for each act of circumvention pursuant to 17 U.S.C. 1203(c)(3)(B).

8.    Finding Defendants jointly and severally liable to Plaintiff for statutory damages of triple the amount awarded under 17 U.S.C. 1203(c)(3)(B) if Defendants are found to have violated 17 U.S.C. 1201 or 1202 within three (3) years after a judgment was entered against Defendants for the same.

9.    Finding Defendants jointly and severally liable to Plaintiff for actual, compensatory, special and punitive damages in an amount to be proven at trial for intentional infliction of emotional distress.

10.     Awarding actual, compensatory, special and punitive damages to Plaintiff in an

amount to be determined at trial for Defendants' copyright law violations and common

law torts.

11.     Awarding appropriate and reasonable costs, attorneys fees and interest related to

bringing and litigating these claims.

12.     Awarding any further relief that the Court finds reasonable, just and proper.


Dated: August 11th, 2023
       Brooklyn, NY                                    Respectfully Submitted,

                                                       HILLARY WRIGHT


                                          By: /s/ Hillary Wright_____
                                             Plaintiff pro se

**PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11. I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

August 11th, 2023

/s/ Hillary Wright
Hillary Wright
313 Degraw St., #2
Brooklyn, NY 11231
580-304-6241
hwrightdailymail@gmail.com

# EXHIBIT A



Photo and Article as originally published by Defendants can be viewed here:
https://archive.md/kCvhP

 **hillllary** •••



            

 Liked by **saxy_waxy** and **248 others**

**hillllary** Kathleen Casillo tried to kill us and she's

**hillllary** Kathleen Casillo tried to kill us and she's been given one desk appearance ticket (a misdemeanor) for reckless endangerment after hitting 9 people and sending 7 to the hospital. She was held for a few hours and then released only to have her first in person court appearance today. To put that in perspective many Black and brown comrades are held for 40+ hours and threatened with going to Rikers for simply exercising their first amendment rights. I was personally held for over 6 hours (twice) for standing on a sidewalk protesting. There is no justice in a racist system built to protect white supremacists just like her. Kathleen Casillo is Kyle Rittenhouse, the only difference is we lived.

# EXHIBIT B



# BLM mob accuses white mother-of-three, 52, of being the 'new Kyle Rittenhouse' after she sent 50 of them flying across Third Avenue when they 'attacked her car' during 2020 protests: She rejects six-day community service plea deal and demands TRIAL

By Melissa Koenig and Tommy Taylor For Dailymail.Com

19:33 EST 01 Dec 2021 , updated 10:29 EST 02 Dec 2021



'It's white supremacy that allowed Kathleen to believe she had the right to end the lives of anyone that got in her way, especially BLM protesters.'

'It has been a very long year. Kathleen Castillo's car left me with five bulging discs in my back and a traumatic brain injury,' Tabitha Howell said.

'It's one thing to face physical recovery. It's another to try to process what happened mentally and emotionally.'



**Protesters outside the courthouse on Wednesday compared Casillo to Kyle Rittenhouse who claimed self-defense when he shot three people at a Black Lives Matter protest in Wisconsin last year. He was acquitted of all charges**





**Following the incident, she initially received no more than a desk appearance ticket and was released hours after her arrest**



**Casillo was arrested by the NYPD after plowing her car through the ICE demonstration on December 11**



**An injured protester is seen being loaded into an ambulance following the incident**

# EXHIBIT C



**Downtown**

# One year later protesters seek harsher punishment for Queens woman who mowed them down in Midtown

By Dean Moses

Posted on December 1, 2021



amny.com/new-york/manhattan/neighborhoods/downtown/one-year-later-protesters-seek-harsher-

Chase   NYC Org   NY DOL   Leaf Medical Portal   PACER | PACER C...   NYSCEF Home   Free Law Projec

THE VILLAGER

✖ Home Pros     🐾 Pet Pros     👤 Jobs     News ⌄     🍴 Things to Do ⌄     Boroughs ⌄     Sports ⌄     Casinos ⌄     Contact Us



Those in attendance compared Kathleen Casillo to Kyle Rittenhouse.

Photo by Dean Moses

Originally, she was given a desk ticket for reckless endangerment, later was charged with reckless assault in the third degree. Casillo was due to make her first court appearance on Dec. 1 at 100 Center Street and the victims of her heavy- footed road